**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| LEN FORD, | : |
| | : CIVIL NO. 09-3102 (NLH) (AMD) |
| Plaintiff, | : |
| | : |
| v. | : |
| | : **OPINION** |
| CONSIGNED DEBTS & | : |
| COLLECTIONS, INC. | : |
| | : |
| Defendant. | : |

**APPEARANCES:**

ALANA M CARRION
MACEY & ACKMAN, PC
17 ACADEMY STREET, SUITE 1615
NEWARK, NJ 07102

    On behalf of plaintiff

**HILLMAN**, District Judge

    Presently before the Court are the motions of plaintiff requesting default judgment and attorney's fees and costs to be adjudged in his favor against defendant on plaintiff's Fair Debt Collection Practices Act claim.  For the reasons expressed below, plaintiff's motions will be granted.

**BACKGROUND**

    Plaintiff, Len Ford, claims that defendant, Consigned Debts & Collections, Inc., violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1962, et seq., through its

communications with plaintiff regarding an unpaid debt.[1]
Plaintiff claims that defendant[2] improperly failed to identify
itself as a debt collector when it telephoned him, improperly
threatened to sue plaintiff if he did not pay off the debt
immediately, and improperly threatened plaintiff that it would
contact his parole officer and have him thrown back in jail if he
did not immediately pay his debt.  Plaintiff claims that this
caused him severe emotional and mental distress.

   Plaintiff filed his complaint on June 25, 2009, and effected
service on defendant on September 24, 2009.  Defendant failed to
answer or otherwise appear in the action within the time
prescribed by the Federal Rules, and plaintiff thus requested a
Clerk's entry of default pursuant to Fed. R. Civ. P. 55(a).[3]  The
Clerk entered defendant's default on October 26, 2009.  On May
10, 2010, plaintiff filed motions for default judgment, pursuant
to Fed. R. Civ. P. 55(b), and for attorney's fees and costs.

   On July 12, 2010, this Court denied without prejudice

---

[1]This Court has subject matter jurisdiction over this case
pursuant to 28 U.S.C. § 1331.

[2]Plaintiff does not identify the individual representing the
defendant collections agency who communicated with him, and
simply refers to defendant--the entity and the individual--as
"defendant."  For present purposes, the Court will do the same.

[3]Fed. R. Civ. P. 55(a) provides, "When a party against whom
a judgment for affirmative relief is sought has failed to plead
or otherwise defend as provided by these rules and that fact is
made to appear by affidavit or otherwise, the clerk shall enter
the party's default."

plaintiff's motions and allowed defendant 30 days to appear in this action.  The Court chose this path because on May 19, 2010, Michael P. Hayes, "Collections Manager" for defendant, mailed a letter to the Court, expressing what the Court construed as his request to vacate default and his intention that defendant would appear and defend itself in this action.  (See Docket Nos. 8, 9.) The letter also explained that the address being used by plaintiff is incorrect, and it provides a new address.

After the expiration of the 30-day period, defendant did not file its appearance, and, accordingly, plaintiff refiled his motions for default, default judgment and for attorney's fees. Approximately two weeks later, Mr. Hayes sent the Court another letter, which again states that defendant cannot defend itself as long as plaintiff mails correspondence to the incorrect address.[4] Defendant, however, has never entered its appearance in this matter or contested plaintiff's claims.[5]

---

[4]As discussed more fully below, defendant's argument regarding plaintiff's use of the incorrect address is disingenuous, and does not absolve defendant from not appearing in this case.

[5]As noted in the Court's prior Opinion, a corporation may not appear *pro se*, and it may not be represented by an officer not licensed to practice law.  U.S. v. Cocivera,  104 F.3d 566, 572 (3d Cir. 1996) (quoting Rowland v. California Men's Colony, 506 U.S. 194, 201-02 (1993) ("'It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel.'").  No counsel has entered his or her appearance on defendant's behalf.

**DISCUSSION**

A. **Default**

The first step in obtaining a default judgment is the entry of default.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the Clerk must enter the party's default."  Fed. R. Civ. P. 55(a). Defendant has been properly served, and it has not filed its answer or any responsive pleading.  Defendant is therefore in default and it should be entered by the Clerk.

B. **Default Judgment**

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading." Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)).  However, a party seeking default judgment "is not entitled to a default judgment as of a right."  Franklin v. Nat'l Maritime Union of America, 1991 U.S. Dist. LEXIS 9819, at *3-4 (D.N.J. 1991) (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992).  The decision to enter a default judgment is "left primarily to the discretion of the district court."  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

4

Although every "well-pled allegation" of the complaint, except those relating to damages, are deemed admitted, Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990), before entering a default judgment the Court must decide whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law," Chanel, 558 F. Supp. 2d at 535 (citing Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). If a review of the complaint demonstrates a valid cause of action, the Court must then determine whether plaintiff is entitled to default judgment.

C. **Analysis**

1. **Whether Plaintiff has Stated a Cause of Action**

As noted above, plaintiff seeks a default judgment on his FDCPA violation claim. To prevail on a claim under the FDCPA, a plaintiff must prove that a "debt collector['s]" effort to collect a "debt" from a "consumer" violated some provision of the FDCPA. See Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227,

5

234 (3d Cir. 2005).

The FDCPA is a strict liability statute.  15 U.S.C. §
1692k(a).  The purpose of the FDCPA is to "eliminate abusive debt
collection practices by debt collectors, to insure that those
debt collectors who refrain from using abusive debt collection
practices are not competitively disadvantaged, and to promote
consistent State action to protect consumers against debt
collection abuses."  15 U.S.C. § 1692e.  The FDCPA prohibits
"debt collector[s]" from using "any false, deceptive, or
misleading representation or means in connection with the
collection of any debt."  Id.  A "debt collector" is defined as
"any person who uses any instrumentality of interstate commerce
or the mails in any business the principal purpose of which is
the collection of any debts, or who regularly collects or
attempts to collect, directly or indirectly, debts owed or due or
asserted to be owed or due another."  Id. § 1692a(6).  The FDCPA
defines "debt," in pertinent part, to mean "any obligation or
alleged obligation of a consumer to pay money."  Id. § 1692a(5).
"A threshold requirement for application of the FDCPA is that the
prohibited practices are used in an attempt to collect a 'debt.'"
Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir.
1987).

In this case, plaintiff contends that he has shown a prima
facie case under the FDCPA because he is a "consumer" and

defendant is a "debt collector" as defined by the FDCPA, and this action occurs out of communications in connection with plaintiff's personal debt.  From that prima facie showing, plaintiff further claims defendant violated three specific sections of the FDCPA: (1) § 1692d, "Harassment or abuse," when it failed to meaningfully disclose its identity during telephone communications with plaintiff; § 1692e, "False or misleading representations," when it failed to disclose its identity and made misrepresentations during telephone communications with plaintiff, falsely represented the legal status of the debt, and threatened action that could not legally be taken; and (3) § 1692f, "Unfair practices," by using unfair and unconscionable means to collect the debt.

    According to plaintiff's complaint, defendant called plaintiff and left a recorded message that did not reveal defendant's identity as a debt collector or its purpose for the phone call.  Only when plaintiff returned defendant's phone call did defendant identify itself and explain it was calling to collect a debt.  Defendant threatened to sue plaintiff if the debt was not paid immediately, and threatened to call plaintiff's parole officer and have him sent back to jail.  As a result of this communication, plaintiff became anxious, nervous, and suffered from loss of appetite and sleep for a few weeks.

    Based on these claims and accepting them as true, defendant

7

clearly qualifies as a "debt collector" under the FDCPA.
Moreover, the verbal communications in defendant's phone call
with plaintiff can be considered to be "false, deceptive, or
misleading," and to constitute a "threat to take any action . . .
not intended to be taken," in violation of § 1692e.  Similarly,
as a debt collector, defendant's failure to identity itself as
such in its communications with plaintiff violated § 1692d.

Plaintiff, however, has not adequately pled facts showing
how defendant violated § 1692f.  Aside from making a broad
statement that defendant's actions were an unfair and
unconscionable means to collect a debt, plaintiff has not pled
facts that demonstrate how defendant has violated § 1692f(1)-(8),
all of which relate to invalid debts, postdated checks, collect
calls, the use of post cards, and the use of symbols other than
the collection company's name and logo.  Accordingly, when
accepting plaintiff's allegations as true for the purposes of
deciding plaintiff's motion for default judgment, plaintiff has
shown violations of two sections of the FDCPA.

### 2.   Whether Plaintiff is Entitled to a Default Judgment

Now that is has been determined that plaintiff has stated a
viable cause of action under the FDCPA, it must be determined
whether plaintiff is entitled to a default judgment.  As stated
above, prior to entering judgment on the counts where a valid
cause of action has been established, three factors must be

8

considered: (1) prejudice to the plaintiff if default judgment is
not granted; (2) whether the defendant has a meritorious defense;
and (3) whether the defendant's delay was the result of culpable
misconduct.  <u>Chamberlain</u>, 210 F.3d at 164.

### a.   Prejudice to the Plaintiff

Plaintiff will be prejudiced absent a default judgment
because defendant's continued failure to respond to plaintiff's
claims leaves plaintiff with no other recourse.  Defendant has
demonstrated its unwillingness to participate in this litigation
through its failure to file an answer to the plaintiff's
complaint, and its failure to oppose the motion for default
judgment.  Indeed, even after the Court afforded defendant the
benefit of the doubt by construing its informal letter to the
Court as its intent to defend itself in this matter, and by
allowing defendant ample time to appear, defendant has failed to
do so.  Instead, defendant mailed another letter to the Court,
complaining that plaintiff's use of an incorrect address
precludes it from defending itself.  Not only is defendant's view
on the address issue substantively incorrect,[6] it also belies

---

[6]Plaintiff's proof of service shows that Michael Hayes was
personally served by a process server on September 24, 2009 at
3:17pm at 212 South 13th Street, Hamburg, PA 19526 (Docket No.
2), which is the address contained in the letterhead of Mr.
Hayes' May 19, 2010 letter to the Court.  This address on South
13th Street is what Mr. Hayes claims is the correct address.  Mr.
Hayes complains that plaintiff has used 1001 South 4th Street
Hamburg, PA 19526, which is incorrect.  Plaintiff, however, has
provided to the Court the Pennsylvania Secretary of State

defendant's argument, as it is clearly aware of the claims lodged
against it by plaintiff in this Court.  A properly-served
defendant has an obligation to defend itself against a
plaintiff's claims, or it must expect that a judgment may be
entered against it.

### b.   Existence of Meritorious Defense

"A claim, or defense, will be deemed meritorious when the
allegations of the pleadings, if established at trial, would
support recovery by plaintiff or would constitute a complete
defense."  Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863,
869-70 (3d Cir. 1984); accord $55,518.05 in U.S. Currency, 728
F.2d at 195; Feliciano, 691 F.2d at 657; Farnese v. Bagnasco, 687
F.2d 761, 764 (3d Cir. 1982).  Here, it is axiomatic that the
Court cannot consider defendant's defenses because defendant has
failed to respond to this action.  See Prudential Ins. Co. of
America v. Taylor, No. 08-2108, 2009 WL 536403, at *1 (D.N.J.
2009) ("[B]ecause Ms. Ducker has not answered or otherwise
appeared in this action, the Court was unable to ascertain
whether she has any litigable defenses.").

Accepting plaintiff's claims as true, it appears that
defendant does not have a meritorious defense because its conduct

---

business address listing for defendant as the South 4th Street
location.  If defendant is no longer at the South 4th Street
location, it is required to update its business registration with
the state.

satisfies a prima facie case for violations of the FDCPA, which
is a strict liability statute.  Moreover, there is no evidence
that defendant's violation was not intentional, or resulted from
a bona fide error.  See 15 U.S.C. § 1692k(c) ("A debt collector
may not be held liable in any action brought under this
subchapter if the debt collector shows by a preponderance of
evidence that the violation was not intentional and resulted from
a bona fide error notwithstanding the maintenance of procedures
reasonably adapted to avoid any such error.").  Accordingly, the
Court finds that had defendant appeared in this action, it most
likely would not have provided a meritorious defense.

### c.    Whether Defendant's Delay is the Result of Culpable Conduct

Defendant's delay appears to be the result of culpable
conduct.  "Culpable conduct is dilatory behavior that is willful
or in bad faith."  Gross v. Stereo Component Sys., Inc., 700 F.2d
120, 123 (3d Cir. 1983).  Plaintiff has presented proof that
defendant was properly served, and through defendant's informal
letters to the Court, it is clear that defendant is aware of the
action and the claims asserted against it.  There is nothing
before the Court to suggest that defendant's failure to respond
to plaintiff's complaint is caused by anything other than
defendant's own culpability and willful negligence.

Consequently, because the Court has found that plaintiff
shall be prejudiced if default judgment is not granted, defendant

11

does not have a meritorious defense, and defendant's failure to appear in this case is the result of its culpable misconduct, judgment shall be entered in plaintiff's favor on his FDCPA claims.

### 3.  Remedies

#### a.   Statutory and Actual Damages

Plaintiff requests this Court to award statutory damages in the amount of $1,000, and actual damages in the amount of $50,000.  Plaintiff explains that he is entitled to this award because defendant's threats to sue plaintiff and send him back to jail caused him to suffer severe emotional and mental distress, to become anxious, lose his appetite, lose peace of mind, and have trouble sleeping.

A debt collector who violates the FDCPA is liable for actual damages sustained, as well as additional damages (called "statutory damages") as the court may allow, but not exceeding $1,000.  15 U.S.C. § 1692k.  Statutory damages under the FDCPA are limited to $1,000 per lawsuit, not $1,000 per violation. Clark v. Capital Credit & Collection Servs., 460 F.3d 1162, 1178 (9th Cir. 2006) ("[T]he fact that numerous violations of the FDCPA are predicated upon one set of circumstances should be considered and that it is best considered during the calculation of damages.").

Actual damages are available to any person injured by a

violation of the FDCPA.  15 U.S.C. § 1692k(a)(1).  FDCPA actual damages encompass damages for emotional distress and relational injuries.  See Zhang v. American Gem Seafoods, 339 F.3d 1020, 1040 (9th Cir. 2003) (upholding emotional damages based only on testimony); Johnson v. Hale, 13 F.3d 1351, 1352 (9th Cir. 1994) (stating that emotional damages may be awarded based only on testimony or appropriate inference from circumstances).  Proof of physical injury is not necessary to obtain an award of emotional distress damages under the FDCPA.  See Bingham v. Collection Bureau, Inc., 505 F. Supp. 864, 875 (D.N.D. 1981).  Given that the FDCPA provides relief for actual damages, including emotional distress damages in the absence of physical injury, a plaintiff's failure to show physical injury does not bar recovery of actual damages.

Here, plaintiff asks for the maximum statutory amount in damages, and $50,000 in actual damages for defendant's violations of the FDCPA.  To support his request for $50,000 in actual damages, plaintiff has submitted an affidavit, in which he states that his conversation with defendant left him "anxious and exasperated," and for the few weeks following, he was unable to sleep well, he lost appetite, he was depressed, and constantly worried about what would happen.  (Docket No. 11-1.)  Plaintiff has not provided any other evidence to support his damages request, and he does not provide any explanation of how he came

13

to the $50,000 amount, or why defendant should be subjected to the statutory maximum penalty.

The Court has reviewed the case law cited by plaintiff wherein a plaintiff has been awarded actual damages for emotional distress, and the Court has independently reviewed similar cases, as well as cases that have addressed whether to award statutory damages.  Those cases show that the maximum statutory damage award is only assessed in cases where there has been repetitive, egregious FDCPA violations, and even in such cases, the statutory awards are often less than $1,000.  Those cases also show that awards for actual damages are minimal for emotional distress absent any indication that mental health treatment has been obtained or that the emotional distress has concretely affected a plaintiff's personal or professional life.  Moreover, even in cases where a plaintiff has suffered permanent personal and professional damages, the damages awards are relatively small, particularly in comparison to plaintiff's $50,000 request.

For example, in Crass v. Marval & Associates LLC, 2010 WL 2104174, *1 (E.D. Wis. 2010), the court considered plaintiff's motion for default judgment on his FDCPA claim.  According to the complaint in that case,

> [d]efendant contacted plaintiff at work multiple times
> concerning a debt that had already been waived and
> discharged by the original creditor.  Despite repeated
> requests to refrain from contacting her at work in
> which she explained that her employer prohibited such

14

contacts, defendant continued to do so.  Despite having
no authorization to contact third parties, defendant
called plaintiff's son on his cell phone multiple
times, leaving messages using language such as
"investigation unit" and "case in my office" that could
lead an unsophisticated consumer to believe  that a
criminal proceeding had been initiated.

Crass, 2010 WL 2104174 at *1.  The court found that taking those

allegations as true, plaintiff had established violations of

several FDCPA sections.  Id.  In determining damages, the court

awarded $1,000 in statutory damages because of "the frequency and

persistence of non-compliance, the nature of the non-compliance,

and the extent to which the non-compliance was intentional."  Id.

The Court denied the plaintiff's request for $3,500 in actual

damages because "she failed to provide a reasonably detailed

explanation of the emotional injuries suffered."  Id. (citing

Denius v. Dunlap, 330 F.3d 919, 929 (7th Cir. 2003) ("[B]are

allegations . . . are not sufficient to establish injury unless

the facts underlying the case are so inherently degrading that it

would be reasonable to infer that a person would suffer emotional

distress from the defendant's action.")).  The court found that

the plaintiff's "conclusory allegations that she has 'suffered,

and continues to suffer, personal humiliation, embarrassment,

mental anguish and emotional distress,' are insufficient to

establish her emotional distress with any certainty."  Id.

Because the plaintiff did not "present evidence establishing such

damages (such as the report of a treating physician), and

defendant's conduct is not so inherently degrading as to support an inference of emotional distress," the court did not award the plaintiff any actual damages. Compare, Thomas v. National Business Assistants, Inc., Nos. Civ. N82-469, N83-77, N83-565, 1984 WL 585309, at *2-3 (D. Conn. Oct. 5, 1984) ("While placing a dollar amount on intangibles such as emotional distress is never easy, the court notes that neither plaintiff has suffered permanent personal ill effects, although their marriage has apparently been irreparably damaged. Their financial and marital states were already poor at the time of the [defendant's] notices.  In that light, Cheryl and Michael Thomas are each entitled to the sum of $200, or $400 total."); Id. (for another plaintiff, the Court finding that the FDCPA-violative notices caused "her shortness of temper with her husband and children," and awarding her $500 in actual damages); Id. (for another plaintiff, the court finding that she "was frightened and humiliated by the [defendant's] letters and thought herself a failure at providing for her family. She believed the federal government was behind the notices and thought she might be jailed and/or fired as a result. She was too embarrassed to confide in anyone although she had sought financial counseling prior to receiving these notices. She refused to even share the letters with her elderly mother who lived with her, in an effort to avoid worrying the mother. Mrs. Rathbun testified that she hoped the

mother wouldn't hear the road adjuster knocking on the door
because she feared her mother's reaction to such a confrontation.
The court awards Mrs. Rathbun $750.00 in actual damages"); Id.
(explaining that for "its repeated noncompliance and intentional
infliction of intimidation and distress, [defendant] shall pay
$500 in additional statutory damages to Linda Chavis, $500 to
Elizabeth Rathbun and $250 each to Cheryl and Michael Thomas");
see also Boyce v. Attorney's Dispatch Service, No. C-3-94-347,
1999 U.S. Dist. LEXIS 12970, at *5-6 (W.D. Ohio April 27, 1999)
(awarding $10,000 in actual damages to plaintiffs under the FDCPA
when debt collector engaged in "the most egregious conduct" by
impersonating a police officer, threatening criminal prosecution,
and speaking to plaintiffs' co-workers).

In this case, defendant left plaintiff one message that did
not identify the caller, plaintiff spoke with defendant once,
where defendant threatened to sue plaintiff, inform his parole
officer about the debt, and have him thrown back in jail, and
defendant spoke with plaintiff's sister, where she was told the
case was already referred to an attorney.  Plaintiff describes
his damages as being exasperated and anxious after the phone
call, and for "the next weeks" he was not able to sleep, lost his
appetite, was depressed and constantly worried about what would
happen.  In comparison to other FDCPA cases, these circumstances
do not warrant plaintiff's requested damages.

17

Defendant's conduct essentially revolved around one threatening phone call, and plaintiff suffered a few weeks of anxiety regarding it.  Ostensibly, since plaintiff has not alleged otherwise, plaintiff does not challenge that he owed the debt, defendant's threats were never repeated, and plaintiff's anxieties eased after a few weeks, without medical treatment. This case, contrasted with the findings of other FDCPA cases, requires the imposition of statutory damages because an FDCPA violation has been found, but the maximum penalty is unwarranted. Moreover, plaintiff has alleged actual damages in the form of a few weeks of emotional distress, which also supports an award for actual damages, but, again, plaintiff's damages are far less than the $50,000 he requests.  Accordingly, the Court will award plaintiff $350 in statutory damages and $200 in actual damages.

### b.   Attorney's Fees and Costs

A plaintiff in any successful action to enforce the FDCPA is entitled to a reasonable attorney's fee and costs as determined by the court.  15 U.S.C. § 1692k(a)(3).  A court has broad discretion in fashioning a reasonable award of attorney's fees under the FDCPA, and the court may reduce the award of attorney's fees by an amount to be determined solely by the court, but only if the opposing party objects to the petitioners application for fees. Norton v. Wilshire Credit Corp., 36 F. Supp. 2d 216, 219 (D.N.J. 1999) (citing Bell v. United Princeton Properties, Inc.,

18

884 F.2d 713, 721 (3d Cir. 1989); see also Savino v. Computer
Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) ("Where a plaintiff
prevails, whether or not he is entitled to an award of actual or
statutory damages, he should be awarded costs and reasonable
attorney's fees in amounts to be fixed in the discretion of the
court.").

The starting point for calculating a prevailing party's
attorney's fees is "the number of hours reasonably expended on
the litigation multiplied by a reasonable hourly rate." Hensley
v. Eckerhart, 461 U.S. 424, 433 (1983); see also Norton v.
Wilshire Credit Corp., 36 F. Supp. 2d 216, 220 (D.N.J. 1999).
This is the lodestar. Id. The court must determine whether the
attorney's hourly rate is appropriate given the attorney's
"skill, experience, and reputation." Loughner v. Univ. of
Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001) (quoting Rode v.
Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990)). The
prevailing party must establish "with satisfactory evidence, in
addition to the attorney's own affidavits, that the requested
rates are in line with those prevailing in the community" for
similar work by lawyers of comparable qualifications. Blum v.
Stenson, 465 U.S. 886, 895 n.11 (1984).

In the present case, plaintiff's counsel has submitted a
sworn declaration that "[t]he attorneys in [our firm's] FDCPA
department are experienced practitioners, having dealt with over

19

one thousand cases of collection harassment."  (Docket No. 12-2.)
Based on his experience in the local legal market and his
knowledge of prevailing billing rates, plaintiff's counsel
explains that his firm's rates are reasonable and appropriate
given their qualifications, their fees have been upheld in
numerous other courts through out the country, and their rates
are consistent with the Department of Justice's matrix of hourly
rates.  This Court finds no reason to doubt plaintiff's counsel's
qualifications and billing rates.

     With regard to the number of hours billed by plaintiff's
counsel, the Third Circuit Court of Appeals has held that "it is
necessary that the Court 'go line, by line, by line' through the
billing records supporting the fee request."  Evans v. Port Auth.
of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2001).  Here, a line-
by-line review of plaintiff's counsel's billing statement shows
that counsel conducted approximately 17.7 hours of legal
research, correspondence, and motion drafting during the course
of the litigation.  Again, this Court finds no reason to question
the reasonableness or appropriateness of the time counsel has
spent on this case.

     Accordingly, plaintiff is entitled to reasonable attorney's
fees and costs.  Plaintiff's counsel is entitled to the lodestar
calculation for time spent on this matter, which is $3,660.00 in
attorney's fees and $415.00 in litigation costs.  Thus, plaintiff

is entitled to $4,075.00 in attorney's fees and costs.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion for default judgment and attorney's fees is granted.  Plaintiff is awarded $350.00 in statutory damages and $200.00 in actual damages. Attorney's fees are awarded to plaintiff in the amount of $3,660.00 along with $415.00 in costs.  The total amount plaintiff is awarded is $4625.00.  An Order and Judgment consistent with this Opinion will be entered.


Date: December 21, 2010             s/ Noel L. Hillman

At Camden, New Jersey         Hon. Noel L. Hillman, U.S.D.J.

21